**Fred E. TETRO, Jr., Plaintiff–Appellant,**

v.

**ELLIOTT POPHAM PONTIAC, OLDSMOBILE, BUICK, AND GMC TRUCKS, INC., Defendant–Appellee.**

No. 98–5361.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted March 10, 1999.

Decided April 6, 1999.

James L. Harris (briefed), Nashville, Tennessee, for Plaintiff–Appellant.

John T. Feeney, III (argued and briefed), Feeney & Murray, Nashville, Tennessee, for Appellee.

Before: SILER, DAUGHTREY, and GILMAN, Circuit Judges.

GILMAN, Circuit Judge.

Fred E. Tetro, a Caucasian male, claims that Elliott Popham Pontiac, Oldsmobile, Buick and GMC Trucks, Inc. (the "dealership") discriminated against him because he has a biracial child. The district court denied the dealership's motion for summary judgment on Tetro's racial discrimination claim, but subsequently dismissed Tetro's action with prejudice due to his counsel's failure to appear and prepare for the final pretrial conference. For the reasons set forth below, we **REVERSE** the district court's dismissal of Tetro's action, **AFFIRM** its denial of summary judgment to the dealership, and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Elliott Popham hired Tetro as the finance manager for his automobile dealership on July 28, 1996. Tetro came highly recommended by Popham's General Manager, Brian McDonald. According to Tetro, he immediately began receiving praise from Popham and his coworkers for his job performance. All went well until the day that Tetro's family visited him at work. It was during this visit that Popham observed Tetro's biracial daughter for the first time. Tetro contends that the work atmosphere suddenly changed for the worse.

According to the affidavit of Wallace Scott McDonald, Tetro's former coworker at the dealership, Popham rolled his eyes in a derogatory manner and immediately walked back into the dealership upon seeing Tetro's family. Tetro alleges that Popham soon began ridiculing and insulting him about his weight in front of employees and customers. In addition, Tetro claims that he and Wallace Scott McDonald overheard Popham talking on the telephone approximately one month after Tetro's family visited the dealership. During that telephone conversation, Popham allegedly stated that "no one ever told me that he had a mixed race child and that this was going to hurt his [Popham's] image in the community and his dealership" and "I can't believe he has a mixed child and Brian [the General Sales Manager who recommended Tetro to Popham] didn't tell [me]." Wallace Scott McDonald's affidavit corroborates Tetro's allegations.

On November 5, 1996, Tetro arrived at work wearing casual clothes. He claims that he dressed casually because he had scheduled a doctor's appointment, which the General Manager had already approved. Popham confronted Tetro regarding his casual attire. Tetro alleges that a heated argument quickly ensued regarding his clothes and his medical appointment. He admits that he became angry and called Popham a thief, liar, cheat, and hypocrite. Much of this argument took place in the showroom in the presence of other employees and customers. Tetro claims that Popham advised him that he should "get his fat a—out of the dealership" or else he would call the police. Tetro left

the dealership and never returned. Wallace Scott McDonald's affidavit states that Popham's racially charged statements were made several days prior to Tetro's alleged discharge.

Tetro filed the instant action on April 18, 1997, alleging that the dealership discriminated against him because of Popham's racial animus directed at Tetro's having a biracial daughter. His claims are based on the dealership's alleged violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(1)-e(17) ("Title VII"), the Tennessee Human Rights Act, Tenn.Code Ann. §§ 4–21–101 to 4–21–1004 ("THRA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA").

Both parties attended the initial case management conference on June 13, 1997, at which time the final pretrial conference was set for February 9, 1998. In late September of 1997, the dealership moved for summary judgment on all claims. Tetro contested the challenge to his racial discrimination claim, but stated in his response that he no longer wished to pursue his ADA cause of action. The district court thereafter granted the dealership's motion for summary judgment as to the ADA claim. Without any analysis, the district court ruled in the same order that genuine issues of material fact precluded summary judgment on Tetro's allegations of racial discrimination. The dealership has filed a cross-appeal of this ruling.

On February 9, 1998, Tetro's counsel failed to appear for the final pretrial conference. He also failed to initiate preparation of the pretrial order as required by the district court. As a consequence of these two failures, the district court, without any warning, dismissed Tetro's action with prejudice. Tetro's counsel explained that the failures were the result of an erroneous entry on his calendar regarding the date of the pretrial conference. As soon as Tetro's counsel was informed of his mistake by the dealership's attorney, he immediately proceeded to the district court, arriving one hour late for the con-

ference. He discovered that Tetro's action had already been dismissed. Tetro filed a motion to reconsider, which the district court denied. He now appeals the district court's dismissal of his action.

## II. ANALYSIS

### A. The district court's dismissal of Tetro's action

#### 1. Standard of review

 We "will reverse a dismissal for noncompliance with local rules only upon a finding of abuse of discretion." *Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir.1998). An abuse of discretion exists when the district court's action leaves us with "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (citation omitted).

#### 2. The district court abused its discretion when it dismissed Tetro's action

The local rules of the Middle District of Tennessee required Tetro's attorney to initiate preparation of a pretrial order. In addition, Rule 16(f) of the Federal Rules of Civil Procedure provides for sanctions in the event that a party fails to appear at a scheduling or pretrial conference. When Tetro's counsel failed to prepare for or attend the pretrial conference, the district court sanctioned Tetro in the most severe manner possible—dismissal of his complaint with prejudice.

 In *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir.1991), this court acknowledged that district courts possess broad discretion to sanction parties for failing to comply with procedural requirements. *Carver* cautioned, however, that the sanction of dismissal for failure to prosecute "is a harsh sanction which the court should order only in extreme situations showing a 'clear record of delay or contumacious conduct by the plaintiff.'" *Id.* at 454 (quoting *Carter v. City of Memphis*, 636 F.2d 159,

161 (6th Cir.1980)). As this court explained in *Stough*, 138 F.3d at 615, the *Carver* court concluded that a district court can dismiss an action for noncompliance with a local rule only if the behavior of the noncomplying party rises to the level of a failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

■ When contemplating dismissal of an action under Rule 41(b), a court must consider:

> (1) whether the party's failure to cooperate is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dilatory conduct of the party; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Stough*, 138 F.3d at 615 (citing *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153–55 (6th Cir.1988)). In the instant action, the district court did not conduct any analysis concerning Tetro's procedural deficiencies, much less the analysis required by *Stough*.

■ An examination of the above elements as applied to the facts of the present case convinces us that the district court abused its discretion when it dismissed Tetro's action. First, the district court did not find that Tetro's counsel acted willfully or in bad faith. Rather, Tetro's counsel explained that the reason for his failure to appear at the pretrial conference was due to his erroneous entry of the date into his calendar. The behavior of Tetro's counsel clearly does not rise to the level of contumacious conduct. Second, there is no evidence that the dealership suffered any prejudice beyond wasting approximately one hour waiting for Tetro and his counsel to appear. Third, the district court failed to provide Tetro with any warning that a failure to comply with the procedural requirements could result in dismissal. Finally, despite the fact that his conduct surrounding the pretrial conference was the only incident of procedural noncompliance committed by Tetro's counsel, the district court did not even consider a less drastic sanction before it ordered that the case be dismissed with prejudice. For all of these reasons, we conclude that the district court committed a clear error of judgment when it dismissed Tetro's action.

## B. Appellate jurisdiction over the dealership's cross-appeal

■ The dealership's cross-appeal arises in an unusual procedural posture. Ordinarily, a defendant who attempts to appeal a denial of summary judgment is either (1) barred from appealing the denial before a final judgment is entered because the denial is a non-appealable, interlocutory order, *see Pacific Union Conference of Seventh–Day Adventists v. Marshall*, 434 U.S. 1305, 1306, 98 S.Ct. 2, 54 L.Ed.2d 17 (1977), (2) allowed to appeal the interlocutory denial because it presents an appealable collateral order under 28 U.S.C. § 1291, *see, e.g., Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (establishing the collateral order doctrine), or (3) barred from appealing the denial because a full trial on the merits has occurred prior to the appeal, *see Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir.1990) (holding "that where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed"). Here, the dealership appeals from the denial of its summary judgment motion after a final judgment was incorrectly ordered, but before a full trial on the merits occurred.

On the one hand, we could decline jurisdiction on the basis that our reversal of the district court's order of dismissal instantly reinstates the case, making the dealership's cross-appeal an impermissible appeal of a non-appealable, interlocutory or-

der. On the other hand, an appeal from a final judgment generally brings up all prior interlocutory orders and rulings that were not reviewable until the entry of a final judgment. *See Jarrett,* 896 F.2d at 1016 n. 1 ("We recognize that decisions in this circuit generally state that interlocutory orders merge into the final judgment and may be presented on appeal of that final judgment...."). In *Jarrett,* this general rule was not applied because the appeal from the denial of summary judgment was brought after a full trial upon the merits had already occurred. *See id.* at 1016.

Here, a full trial has yet to occur, but the district court has entered a final judgment—dismissal with prejudice. The denial of the dealership's motion for summary judgment would therefore be reviewable along with Tetro's appeal from the order of dismissal. Considering that Tetro has appealed from the entry of a final judgment, we conclude that jurisdiction exists over the cross-appeal under the general rule that an appeal from such a final judgment brings with it all prior interlocutory orders. We also note that the policy of avoiding piecemeal litigation is not applicable in the present case because Tetro's appeal from a final order is already before the panel and the parties have fully briefed the dealership's cross-appeal. Furthermore, the only issue raised by the cross-appeal is the purely legal question of whether Tetro states a claim upon which relief can be granted under Title VII and the THRA.

## C. Tetro's racial discrimination claim

### 1. The racial discrimination statutes at issue

Title VII prohibits racially discriminatory employment practices. Specifically, the statute provides in pertinent part as follows:

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e–2(a). Likewise, under the Tennessee Human Rights Act, it is unlawful for an employer "to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Tenn.Code Ann. § 4–21–401(a)(1). The Tennessee Supreme Court has held that THRA claims are analyzed in the same manner as Title VII claims. *See Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 31 (Tenn.1996) ("The stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws. Accordingly, our analysis of the issues in this appeal is the same under both the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act.") (internal citations omitted).

### 2. Tetro's allegations of racial discrimination state a claim upon which relief can be granted

The dealership argues on appeal that even if Tetro's factual allegations are true, he has still failed to state a claim upon which relief can be granted. It contends that neither Title VII nor the THRA provides relief for Tetro because the plain language of the statutes does not encompass a cause of action based on alleged discrimination due to the race of a third party. Both statutes prohibit discrimination "because of such individual's race," which at first glance might imply that Congress only intended to prohibit discrimination based upon the "individual's race," rather than on the race of a third person with whom the individual associates. The dealership in fact argues that this is an alternative ground to affirm the district court's dismissal of Tetro's action.

This circuit has not addressed the issue at hand in a published opinion. Other courts, however, have broadly construed Title VII to protect individuals who are the victims of discriminatory animus towards third persons with whom the individuals associate. *See, e.g., Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 890 (11th Cir.1986) (ruling that both Title VII and § 1981 prohibit hiring discrimination based on an individual's association with African–Americans, or based on interracial marriage); *Chacon v. Ochs,* 780 F.Supp. 680, 680–81 (C.D.Cal.1991) (holding that it is unlawful under Title VII to discriminate against a white woman married to a Hispanic man); *Whitney v. Greater N.Y. Corp. of Seventh–Day Adventists,* 401 F.Supp. 1363, 1366 (S.D.N.Y.1975) (ruling that Title VII provides a cause of action for a white plaintiff who is discriminated against because of the plaintiff's relationship with African–Americans).

In *Parr,* the Eleventh Circuit held that "[w]here a plaintiff claims discrimination [in a Title VII action] based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race." *Parr,* 791 F.2d at 892. This court quoted *Parr*'s statement in an unpublished opinion and applied it to a similar claim brought under Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), 42 U.S.C. §§ 3601–3631. *See Troy v. Suburban Management Corp.,* 1990 WL 97490, at *5 n. 5 (6th Cir. July 13, 1990) ("While [plaintiff] herself is not a member of a racial minority, her allegation that her tenancy was terminated on account of her association with a black man is sufficient to state a cause of action under Title VIII.").

■ Similarly, we find that Tetro has stated a claim upon which relief can be granted under Title VII. A white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child. As the Eleventh Circuit pointed out,

> "Title VII of the 1964 Civil Rights Act provides us with a clear mandate from Congress that no longer will the United States tolerate this form of discrimination. It is, therefore, the duty of the courts to make sure that the Act works, and the intent of Congress is not hampered by a combination of a strict construction of the statute in battle with semantics."

*Parr,* 791 F.2d at 892 (quoting *Culpepper v. Reynolds Metals Co.,* 421 F.2d 888, 891 (5th Cir.1970)).

This approach is bolstered by the fact that the Equal Employment Opportunity Commission ("EEOC"), "which Congress charged with interpreting, administering, and enforcing Title VII, has consistently held that an employer who takes adverse action against an employee or a potential employee because of an interracial association violates Title VII." *Parr,* 791 F.2d at 892 (citing multiple EEOC decisions). Moreover, the Supreme Court has declared that the EEOC's interpretation of Title VII is entitled to "great deference." *Griggs v. Duke Power Co.,* 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

If Title VII stated that an employer could not discriminate based *directly* on such individual's race, then a fair reading would allow no recovery here. If, on the other hand, Title VII read that an employer could not discriminate based *directly or indirectly* on such individual's race, then a fair reading would clearly allow recovery. Recovery would be allowed under the latter language because the alleged discrimination in the present case was due to Tetro's race being different from his daughter's. If he had been African–American, presumably the dealership would not have discriminated because his daughter would also have been African–American. Or, if his daughter had been Caucasian, the dealership would not have discriminated because Tetro himself is Caucasian. So the essence of the alleged discrimina-

tion in the present case is the contrast in races between Tetro and his daughter. This means that the dealership has been charged with reacting adversely to Tetro because of Tetro's race in relation to the race of his daughter. The net effect is that the dealership has allegedly discriminated against Tetro because of his race.

■■■■■ Title VII as actually worded simply prohibits discrimination "because of such individual's race." There is no mention of the words "directly" or "indirectly" in the statute. Under these ambiguous circumstances, we look to the purpose of the statute for its proper interpretation. *See Nixon v. Kent County*, 76 F.3d 1381, 1394 (6th Cir.1996) (Keith, J., dissenting) ("Where the language of a statute is ambiguous, this Court reviews the legislative history because the 'cardinal canon of statutory construction [is] that statutes should be interpreted harmoniously with their dominant legislative purpose.' ") (brackets in original) (quoting *United States v. Barry*, 888 F.2d 1092, 1096 (6th Cir.1989)). In addition, we look to the interpretation of the government agency charged with enforcing the statute in question. *See Griggs*, 401 U.S. at 434 (stating that the EEOC's interpretation of Title VII is entitled to "great deference"). Because both the purpose of Title VII and the EEOC's interpretation are consistent with allowing a cause of action for the type of discrimination that Tetro has alleged, we conclude that this is the proper way to apply the statute. Accordingly, Tetro has stated a claim under Title VII upon which relief can be granted.

## III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district's dismissal of Tetro's action, **AFFIRM** its denial of summary judgment to the dealership, and **REMAND** the case for further proceedings consistent with this opinion.