Paul ARCENEAUX, Plaintiff–
Appellant,

v.

**VANDERBILT UNIVERSITY,**
Defendant–Appellee.

No. 00–5691.

United States Court of Appeals,
Sixth Circuit.

Dec. 28, 2001.

Batchelder, Circuit Judge, concurred in the result and filed a separate statement.

Before BATCHELDER and COLE, Circuit Judges; GWIN, District Judge.*

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

## OPINION

COLE, Circuit Judge.

Plaintiff-appellant, Paul Arceneaux, appeals the district court's grant of summary judgment in favor of defendant-appellee, Vanderbilt University ("Vanderbilt"), in his sex discrimination action filed under Title IX of the Civil Rights Act of 1972, 20 U.S.C. § 1681 *et seq.* The district court held that although an implied cause of action for employment discrimination exists under Title IX, and is not preempted by Title VII, Arceneaux nevertheless failed to make out a *prima facie* case of discrimination because he failed to establish that he was a member of a protected class. On appeal, Arceneaux asserts that the district court erred because a Title IX plaintiff need not be a member of a recognized protected class; he need only allege that he was discriminated against on the basis of his association with a member of a recognized protected class. In any event, Arceneaux failed to establish a *prima facie* case of discrimination by showing that a comparable, non-protected person was treated better. For the reasons that follow, we AFFIRM the judgment of the district court.

## BACKGROUND

The relevant facts are undisputed, and resolution of this case turns on a purely legal question. Arceneaux has been the head coach of the men's cross country team and the women's track and cross country teams at Vanderbilt University since January 1993. Neither athletic program is considered by the university to be a "revenue sport"—that is, a sport that generates significant revenue compared to the expense of operating its program.

Pursuant to the Equity in Athletics Disclosure Act of 1994, Vanderbilt publishes information concerning its intercollegiate athletics programs. According to Arceneaux, the information provided for the re- porting year beginning July 1, 1998, and ending June 30, 1999, indicates that the university had 5,885 undergraduates. Of those individuals participating in intercollegiate athletics, 50.5% were male and 49.5% were female. Of the total athletic-related student aid scholarships awarded, 67.3% of the aid was awarded to men and 32.7% was awarded to women. There currently are approximately forty-three women participating on the track and cross country teams, the largest women's sport offered by the university. The only program offered by the university with more participants is football.

Arceneaux brought suit in federal district court, alleging that Vanderbilt failed to live up to its commitment to women's athletics, particularly the women's track and cross country programs, by providing adequate resources to the programs. Arceneaux complains that Vanderbilt discriminated against him (1) by paying him a salary substantially lower than that of similarly-situated coaches of male athletic teams; (2) by paying him a salary substantially lower than that of other similarly-situated coaches of comparable female athletic teams at other universities; and (3) by failing to provide the women's teams he coaches with adequate resources, such as equipment and uniforms.

Before reaching the merits of Arceneaux's discrimination claim, the district court first determined that an implied cause of action for employment discrimination indeed does exist under Title IX and is not preempted by Title VII. Although Vanderbilt argued in its motion for summary judgment that no such implied cause of action exists under Title IX, it concedes this point on appeal based on this Court's unpublished decision in *Ivan v. Kent State Univ.*, 92 F.3d 1185, 1996 WL 422496, at *1 (6th Cir. July 26, 1996) (per curiam) (holding that Title IX creates a private

cause of action for employment discrimination and expressly overruling the conclusion reached by the district court in *Wedding v. Univ. of Toledo*, 862 F.Supp. 201, 203 (N.D.Ohio 1994), which held that Title VII preempts an individual's private remedy under Title IX.[1]

## DISCUSSION

### I. Standard of Review

We review a district court's decision to grant a motion for summary judgment de novo. *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). Summary judgment is appropriate when there exists "no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

### II. Title IX

Title IX of the Education Amendments of 1972 states:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a). In *North Haven Board of Education v. Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982), the Supreme Court expressly recognized that "Title IX proscribes gender discrimination [against its employees and students] in education programs or activities receiving federal financial assistance." *Id.* at 514, 102 S.Ct. 1912. Because Title IX does not provide an analytical framework for claims of gender discrimination by an educational institution, most circuits, including ours, have applied the *McDonnell Douglas* burden-shifting framework used in analyzing discrimination claims arising under Title VII. *See Ivan*, 1996 WL 422496, at *2; *Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir.1994); *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203 (4th Cir. 1994); *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824 (10th Cir.1993); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881 (1st Cir.1988); *Mabry v. State Bd. of Cmty. Colls. & Occupational Educ.*, 813 F.2d 311 (10th Cir.1987); *O'Connor v. Peru State Coll.*, 781 F.2d 632 (8th Cir. 1986); *see also Andriakos v. Univ. of S. Indiana*, 19 F.3d 21, 1994 WL 83331 (7th Cir. Feb.17, 1994).

The four-part *McDonnell Douglas* test requires that the plaintiff first must establish a *prima facie* case of discrimination by showing that he or she: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) that "a comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972)). Here, the district court's decision turned entirely on Arceneaux's inability to satisfy the first prong of the *McDonnell Douglas* test, *i.e.*, to show that he was a member of a recognized protected class. On appeal, Arcen-

---

1. *See also Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 205–06 (4th Cir. 1994) (recognizing private remedy under Title IX); *Bedard v. Roger Williams Univ.* 989 F.Supp. 94, 97 (D.R.I.1997) (same); *Bowers v. Baylor Univ.*, 862 F.Supp. 142, 145 (W.D.Tex. 1994) (same); *Nelson v. Univ. of Maine Sys.*, 923 F.Supp. 275, 278–79 (D.Me.1996) (same); *but see Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir.1997) (holding that Title IX does not create a private right of action).

eaux submits that application of the *McDonnell Douglas* framework is not fatal to his claim because he need not show that he himself is a member of a protected class. Arceneaux asserts that it is enough for him to show that he was discriminated against based on his association with members of a protected class.

For this proposition, Arceneaux relies on our decisions in *Tetro v. Elliot Popham Pontiac, Oldsmobile, Buick and GMC Trucks. Inc.,* 173 F.3d 988 (6th Cir.1999), and *Johnson v. University of Cincinnati,* 215 F.3d 561 (6th Cir.2000). In *Tetro,* we addressed a race discrimination claim brought by a white employee who had a biracial child. *See Tetro,* 173 F.3d at 994. *Tetro* explained:

A white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child.... If he had been African–American, presumably the dealership would not have discriminated because his daughter would also have been African–American. Or, if his daughter had been Caucasian, the dealership would not have discriminated because Tetro himself is Caucasian. So the essence of the alleged discrimination in the present case is the contrast in races between Tetro and his daughter. This means that the dealership has been charged with reacting adversely to Tetro because of Tetro's race in relation to the race of his daughter. The net effect is that the dealership has allegedly discriminated against Tetro because of his race.

*Id.* at 994–95. Accordingly, *Tetro* held that the employee had standing and stated a viable cause of action against his former employer under Title VII, stating, "Title VII [was designed] to protect individuals who are the victims of discriminatory animus towards third persons with whom the individuals associate." *Id.* at 994. The district court, however, did not read *Tetro* as expansively as Arceneaux would have liked, expressly declining to "extrapolate" from *Tetro* the general rule that if alleged unlawful employment discrimination against a third person adversely affects the plaintiff, the plaintiff has a cause of action for discrimination.

In *Johnson,* a decision issued less than a month after the district court rendered its opinion, the plaintiff brought a discrimination action under Title VII and 42 U.S.C. § 1981 predicated not on his own membership in a protected class, but rather, on his advocacy on behalf of those in a protected class, namely women and minorities. *See id.* at 566. There, the district court found that the plaintiff failed to show that he was a member of a protected group because he "postured his protected status, not as a member of a racial minority, but rather as a person who advocates on behalf of women and minorities." *See id.* at 573 (internal quotation marks and alteration omitted). The *Johnson* Court rejected the district court's reasoning and reversed. *See id.* at 577–78. Relying largely on *Tetro,* the *Johnson* Court held:

Simply put, this Court has now spoken that in order to state a cognizable claim under Title VII, the plaintiff himself need not be a member of a recognized protected class; he need only allege that he was discriminated [against] on the basis of his association with a member of a recognized protected class.

*Id.* at 574; *see also Wanchik v. Great Lakes Health Plan, Inc.,* 248 F.3d 1154, 2001 WL 223742, at *12 (6th Cir. Mar.2, 2001) (citing *Tetro* and *Johnson* for the proposition that, under current Sixth Circuit law, strict membership in protected class is no longer necessary to sustain a claim for discrimination).

Vanderbilt distinguishes *Tetro* and *Johnson* by arguing that in *Tetro*, the Court was concerned primarily with the fact that the alleged discrimination was based on the *difference* between the race of the father and child, not the fact that one was white or that one was biracial. Vanderbilt also argues that in *Johnson*, it was the plaintiff's *advocacy* on behalf of women and minorities that resulted in his discharge. In the present case, however, Arceneaux simply *coaches* women; there has been no allegation that Arceneaux was an *advocate* on behalf of his female student athletes.

■ Regardless of whether Arceneaux satisfied the first prong of the *McDonnell Douglas* test, there is no question that he failed to satisfy the fourth prong, *i.e.*, that "a comparable non-protected person was treated better." *Mitchell*, 964 F.2d at 582 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). Furthermore, even if Arceneaux could make out a *prima facie* case of discrimination, Vanderbilt has articulated legitimate, non-discriminatory reasons for paying him less than some of the other coaches, and Arceneaux has presented no evidence of pretext.

## CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.

ALICE M. BATCHELDER, Circuit Judge.

I concur in the result reached by the majority, although I think that Arceneaux has failed to satisfy the first prong as well as the last prong of the *McDonnell Douglas* test. I write separately, however, only to say that I agree with the well-reasoned opinion of the Fifth Circuit in *Lakoski v. James*, 66 F.3d 751 (5th Cir.1995), that Congress did not intend for Title IX to provide the route for an end-run around

Title VII for individuals claiming employment discrimination on the basis of gender. I would therefore dispose of this case on that basis.