Debra Sue VITT, Plaintiff,

v.

CITY OF CINCINNATI, Defendant.

No. C–1–01–355.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 18, 2002.

Mark Joseph Byrne, Jacobs, Kleinman, Seibel & McNally, Cincinnati, OH, for plaintiff.

Augustine Giglio, Cincinnati, OH, for defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant City of Cincinnati's Motion for Summary Judgment (doc. 11), Plaintiff's Memorandum in Opposition (doc. 23), and Defendant's Reply (doc. 26).

## BACKGROUND

This case concerns alleged racial discrimination against Plaintiff, a Caucasian, during her employment as administrative technician for the City of Cincinnati. Plaintiff alleges that on the second day at her position within the department of City Manager John Shirey, Plaintiff's supervisor Fannie Nicholes, an African–American, told her that she should think about changing her appearance due to the fact that she would be working with men and they might perceive her in a negative manner (doc. 1). This was the beginning of a bad relationship between Plaintiff and Ms. Nicholes that spanned from mid–1998 through 2000. In 2000, Plaintiff was given a new supervisor at her request, in a different department so that she would not have to interact with Nicholes, and others whom she accused of discrimination (doc. 11). Plaintiff complains that during her employment under Ms. Nicholes, she was instructed by Ms. Nicholes that only certain people on a certain level were entitled to speak to the City Manager, and that Plaintiff was not on that level (doc. 1). Plaintiff was also allegedly instructed not to speak to departmental directors, and was reprimanded for having contact with Congressman Rob Portman's office (*Id.*).

While Plaintiff was employed under Ms. Nicholes, she also had interpersonal conflict with a colleague, Gina Ruffin Moore, an African American, who allegedly spoke to Plaintiff in a rude and condescending manner (*Id.*). When Plaintiff reported Ms. Moore's conduct to Ms. Nicholes, Ms. Moore allegedly stated that perhaps Plaintiff just resented the fact that two black females were telling her what to do (*Id.*). Plaintiff allegedly protested that this was untrue, to which her supervisor Ms. Nicholes allegedly responded, "All white people are prejudiced, it's just subconscious with some. They just can't help it" (*Id.*). On another occasion, Ms. Moore gave her a copy of a book about slavery, and allegedly made remarks about slavery that Plaintiff could not specifically identify as offensive (doc. 11).

Plaintiff alleges that when she continued to report to Ms. Nicholes, Nicholes verbally abused her, gave her less than satisfactory performance evaluations, required her to perform unnecessary job duties, made racial remarks to her, singled her out for "brow beating" meetings, while treating Plaintiff unequally because of her race, in comparison to her co-employees (doc. 1). Plaintiff further alleges that she was left to take messages for Ms. Nicholes, Ms. Moore, and another African American colleague, Ms. Shirley Durham, while all three excluded her from participating in a seminar (*Id.*). Plaintiff alleges that she was not provided with appropriate supplies, that she was denied training in Excel, PowerPoint, and in relation to the city's payroll system (*Id.*). Plaintiff alleges that Ms. Nicholes and Mr. John Shirey accused her of loading up breakfast meetings with city malcontents and troublemakers, that she was not given enough time to complete work tasks, and that during one conversation with Ms. Moore, Moore stated that white women will not do black women's hair because they think they are too good and that black women have "cooties" (*Id.*). Finally, Plaintiff al-

leges that her position required her to remain at the front desk of City Hall, except for lunches and breaks when Ms. Dunham and Ms. Moore were periodically required to take her post, but at times would not show up, causing her to miss lunch (*Id.*). Plaintiff alleges that when she reported this to Ms. Nicholes, her complaints were disregarded (*Id.*).

According to Plaintiff, she took her concerns to City Manager John Shirey, who after one week approached her in a loud and condescending manner stating that he did not have time for people like her (*Id.*). Though Plaintiff concedes that shortly after this, Mr. Shirey issued a memorandum to all City Employees prohibiting workplace discrimination, met with her in late fall 1999 and for two hours on March 9, 2000, and also issued a policy on a diverse and respectful workforce, she states that Shirey never contacted her to resolve "outstanding issues" and told her that though reverse discrimination occurs, "their side is the only one that gets heard" (*Id.*). On May 24, 2000, Plaintiff arrived for work and found the words "white bitch" etched into her desktop (*Id.*). In September 2000 Plaintiff filed an Equal Employment Opportunity Charge of Discrimination with the City of Cincinnati EEO Office, the same month, her supervisor was changed (*Id.*).

Plaintiff brings a claim pursuant to 42 U.S.C. §§ 2000(e)–2(a) *et seq.* based upon Defendants' alleged disparate treatment because of her race and the existence of a hostile environment based on her race. Plaintiff also brings parallel state race discrimination claims, alleging violation of Ohio Revised Code § 4112.02(A) and Ohio public policy. Plaintiff has abandoned prior claims for retaliation and for sex discrimination.

Defendants filed their motion for summary judgment alleging that Plaintiff did not suffer an adverse employment action nor was she treated differently than similarly-situated employees (doc. 11). Defendants further allege that Plaintiff's claim for a hostile work environment should be dismissed because no material issue of fact exists relating to such a claim (*Id.*). Defendants allege that Plaintiff cannot show that she was subjected to racial harassment, that the alleged harassment did not amount to a hostile work environment, nor that the employer failed to take reasonable care to prevent and correct any such harassing behavior (*Id.*). Defendants further argue that Plaintiff's claims are time barred, and that her state law claims are invalid for the same reasons her federal claims fail (*Id.*).

## ANALYSIS

### I. Standard of Review

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th

Cir.1992); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino*, 980 F.2d at 405.

As the Supreme Court stated in *Celotex*, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Guarino*, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino*, 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. *Guarino*, 980 F.2d at 410; *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991).

## II.  Plaintiff's Title VII Claims.

### A.  Hostile Work Environment

Defendant correctly points out in its Motion for Summary Judgment that a plaintiff may establish a violation of Title VII by proving that the discrimination based on race created a hostile or abusive work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57,66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir.) cert. denied, 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997). Discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) *quoting Meritor Savings Bank*, 477 U.S. at 65, 106 S.Ct. 2399. To establish a *prima facie* case, a plaintiff must show that (1)she was a member of a protected racial class, (2) she was subject to unwelcome sexual or racial harassment, (3) the harassment was based on her race, (4) the harassment created a hostile work environment, and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), *Williams v. General Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir.1999).

The Court finds well-taken Defendant's argument that Plaintiff's allegations fail to establish a Title VII hostile work environment. The Court must consider the totality of the circumstances when determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Williams*, 187 F.3d at 562. Those circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" *Morris v. Oldham County Fiscal Court*,

201 F.3d 784, 790 (6th Cir.2000) *citing Harris,* 510 U.S. at 23, 114 S.Ct. 367. Isolated incidents will not amount to discriminatory changes in the terms or conditions of employment. *Morris,* 201 F.3d 784, 790. Furthermore, not all harassment constitutes discriminatory harassment and Title VII is not "a general civility code" *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275.

The Court has reviewed the incidents alleged by Plaintiff and finds that none of them when viewed under the totality of the circumstances amount to a hostile work environment. Plaintiff was subjected to, at most, mere offensive utterances, and the facts show that her work performance did not suffer unreasonably. Her performance evaluations were not materially affected, and she continued to receive raises and step-up in pay for meeting expectations. The alleged "brow-beating meetings" are not at all clearly linked to race, and Plaintiff admitted under deposition testimony that her supervisor Ms. Nicholes was viewed by another African American employee as difficult to work for because she was threatened by any woman that is intelligent or assertive or stands up for herself. The Court finds that an interpersonal conflict existed between Plaintiff and Ms. Nicholes, but that Plaintiff has not shown that alleged behavior by Ms. Nicholes was connected to or motivated by racial animus. Plaintiff never suffered physical threats or physical humiliation. Explicit references to race that could arguably be construed as offensive were infrequent in the time line of communication between Plaintiff and her co-workers. As such, Plaintiff has failed to demonstrate prongs two through four of a *prima facie* case that she suffered a hostile work environment under the meaning of Title VII.

Furthermore, the Court notes that her employer took steps to address Plaintiff's concerns. Though Plaintiff's briefing attempts to paint a picture of an insensitive and nonresponsive employer, the Court finds that the City Manager exercised reasonable care to prevent and correct any harassing behavior. City Manager John Shirey issued warnings to employees that if they engaged in such behavior they would be subject to discipline up to and including discharge. Mr. Shirey met with Plaintiff to discuss her concerns. The City EEO office invested its resources into investigating Plaintiff's Complaints. Plaintiff may have desired a more expeditious response, but there is no evidence of bad faith delay on the part of Defendant or its agents in addressing Plaintiff's concerns. Such investigation was cut short, near its completion, when Plaintiff filed her federal Equal Employment Opportunity Commission complaint. After someone carved an offensive epithet on Plaintiff's desk, Plaintiff found Ms. Nicholes "very, very consoling." (doc. 12). Ms. Nicholes immediately contacted the police and had a report filed.

■ Mr. Shirey's alleged inappropriate remark that discrimination claims by Caucasians do not get a fair hearing is at the least a flippant remark and at most represents a lack of understanding of the law. A Caucasian plaintiff that can establish a *prima facie* case of racial discrimination has grounds for a Title VII claim. *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.,* 173 F.3d 988 (6th Cir.1999) (rejection of Title VII claim of Caucasian male reversed on appeal); *Lawrence Foltz v. Urban League of Portland, Inc.,* 2000 U.S. Dist. LEXIS 2257 (February 18, 2000). This Plaintiff, however, has not established the requisite elements of a *prima facie* case and her Title VII claim based upon a hostile environment fails.

**B. Disparate Treatment**

Plaintiff may also prove her Title VII claim by demonstrating that she was treat-

ed differently than similarly-situated employees because of her race. Plaintiff may establish such claim "either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination." *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000) (*citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997)). As the Sixth Circuit has recognized, however, "it is the rare situation when direct evidence of discrimination is readily available, thus victims of employment discrimination are permitted to establish their cases through inferential and circumstantial proof." *Kline*, 128 F.3d at 348; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this approach, Plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination by proving: 1) she is a member of a protected class; 2) she was qualified for her job and performed it satisfactorily; 3) despite her qualifications and performance, she suffered an adverse employment action; and 4) that she was replaced by a person outside the protected class or was treated less favorably than a similarly-situated individual outside her protected class. *Johnson*, 215 F.3d at 572–73.

█ The above approach, though taken by the parties in this case, is not necessarily the approach of the Sixth Circuit in reverse discrimination disparate treatment cases. Although the Sixth Circuit has stated that it has serious misgivings about imposing a different standard in "reverse discrimination" cases, *Pierce v. Commonwealth*, 40 F.3d 796, 801 (6th Cir.1994), it has adopted the following test for such cases as the instant one: [A] prima facie case of "reverse discrimination" is established upon a showing (1) that "background circumstances support the suspicion that the defendant is that unusual

employer who discriminates against the majority," *Parker v. Baltimore and Ohio Railroad Co.*, 652 F.2d 1012 at 1017, *see also Daye v. Harris*, 655 F.2d 258 (D.C.Cir.1981); and upon a showing (2) that the employer treated differently employees who were similarly situated but not members of the protected class. *Pierce*, 40 F.3d 796, 801.

Under either approach, Plaintiff's claim fails. Plaintiff has not established that the Defendant falls among the class of unusual employers who discriminate against the majority. Nor has Plaintiff demonstrated disparate treatment to similarly-situated employees, as further detailed below.

If, as assumed by the parties, and as suggested by precedent, Caucasian is a protected racial class, *see Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988 (6th Cir. 1999) ("Title VII as actually worded simply prohibits discrimination 'because of such individual's race.'"), then the elements articulated in *Johnson*, 215 F.3d at 572–73, must be met by Plaintiff. As Plaintiff has not produced direct evidence of disparate treatment based on race, she must rely on circumstantial evidence. To complete her *prima facie* case under *Johnson* she must demonstrate that she suffered an adverse employment action and that she was treated less favorably than a similarly-situated individual outside her protected class. As demonstrated below, the Court finds that Plaintiff has not established the requisite elements, and thus her claim for disparate treatment fails.

**1. Adverse Employment Action**

█ A materially adverse employment action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities." *Hollins v. Atlantic Co.,* 188 F.3d 652 (6th Cir.1999). *De minimis* employment actions are not materially adverse and therefore are not actionable. *Jacklyn v. Schering Plough Healthcare Products,* 176 F.3d 921, 930 (6th Cir.1999).

Plaintiff admits a dearth of case authority to support her position that denial of computer training and seminar attendance constitutes an adverse employment action (doc. 23). The Court finds unclear how PowerPoint training would be necessary for Plaintiff's unique position when her primary duties involved answering phone calls and staffing the main desk at City Hall. Such decisions to deny or grant training or to permit attendance at seminars clearly fall within the realm of the employer's business judgment. Plaintiff was free to seek any desired training in her free time at her own expense; her employer was not required to provide it.

■ Finally, Plaintiff has not shown evidence of demotion, decreased wage or salary, or diminished material responsibilities. The facts indicate the inverse: Plaintiff continued to receive raises and step-up pay for meeting expectations. Plaintiff sought to become a classified employee and was granted such status. As such, Plaintiff has not demonstrated that she suffered an adverse employment action.

**2. Similarly–Situated Individual**

■ Having found that Plaintiff did not suffer a materially adverse employment action, the Court need not reach the question of whether a similarly-situated individual outside her class received different treatment. However, the facts show that Plaintiff's claim fails on this point as well, and the Court will briefly demonstrate how so. To establish disparate treatment, Plaintiff must produce evidence that other employees are "similarly situated in all respects." *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir.1992)

*citing Stotts v. Memphis Fire Department,* 858 F.2d 289 (6th Cir.1988); *Lanear v. Safeway Grocery,* 843 F.2d 298 (8th Cir. 1988) (plaintiff must prove that he and the white employee were similarly situated in all respects); *Cox v. Electronic Data Systems Corp.,* 751 F.Supp. 680 (E.D.Mich. 1990). "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583, *citing Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531 (S.D.N.Y.1986).

Plaintiff conceded that her job position was unique and as such, there is no similarly-situated individual with whom to compare her position. The only African–American under Ms. Nicholes' supervision in the administrative technician classification was Ms. Dunham, but Plaintiff stated that their duties were different (doc. 12). The Court finds that the alleged differences in treatment, which the Court already found *de minimis* in nature, above, can be attributed to the fact that Plaintiff's job duties were different from Ms. Dunham. Although both employees were in the same department and on the same administrative level, and both answered to Ms. Nicholes, it is not established that their jobs were equivalent.

**III. CONCLUSION**

Plaintiff has failed to establish her Title VII claims for racial discrimination based upon a hostile environment or on disparate treatment. There is no genuine issue as to any material fact in this case, and Defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Plaintiff had a

personality conflict with a supervisor and some of her peers. Based upon some inappropriate but isolated remarks, Plaintiff construed the entire personality conflict as one based upon racial discrimination. Plaintiff suffered no material adverse employment action, and actually received raises and a transfer to another position at her request. The City Manager took time to meet with Plaintiff on a number of occasions and issued clear policies reiterating to employees that racial discrimination would not be tolerated.

As such the Court dismisses Plaintiff's federal claims with prejudice. The Court therefore has no need to reach the question whether Plaintiff's claims are time barred, and has no basis for jurisdiction over Plaintiff's parallel state law claims for alleged violation of Ohio Revised Code § 4112.02(A) and Ohio public policy.

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claims (doc. 11) DISMISSES such federal claims with prejudice, and DISMISSES Plaintiff's state law claims without prejudice.

SO ORDERED.