Angela **MORRAN**, Plaintiff,

v.

**NEVADA SYSTEM OF HIGHER EDUCATION, a political subdivision of the State of Nevada, Cary S. Groth, an individual, John Lilley, an individual, Gina Jones, an individual, Rita Laden, an individual, Defendants.**

No. 3:05–CV–00577–ECR (RAM).

United States District Court,
D. Nevada.

March 30, 2007.

Jeffrey A. Dickerson, Reno, NV, for Plaintiff.

Frank H. Roberts, University of Nevada, Reno, Assistant General Counsel, Nevada System of Higher Education, Reno, NV, for Defendants.

*Amended Order*

EDWARD C. REED, District Judge.

The Order of the Court (# 41), dated and filed March 29, 2007, is amended to read as set forth herein:

By their motion of August 10, 2006(# 25), Defendants Nevada System of Higher Education ("NSHE"), Cary S. Groth, John Lilley, Gena Jones (spelled "Gina Jones" in Plaintiff's Amended Complaint (# 10)), and Rita Laden seek summary judgment in this action. Plaintiff's amended complaint (# 10) alleges violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 *et seq.*, (First Claim for Relief), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, (Second Claim for Relief), and 42 U.S.C. § 1983 (Third Claim for Relief). Plaintiff filed her opposition (# 37) to Defendants' motion (# 25) on October 1, 2006. Defendants' replied (# 39) in support of their motion (# 25) on October 10, 2006. To the extent that Defendants' motion (# 25) seeks summary judgment on Plaintiff's claim under the FMLA, it is dealt with in our separate Order released concurrently with the present Order.

*Statement of Disputed and Undisputed Facts* [1]

Plaintiff was employed by the University of Nevada, Reno Athletic Department as Ticket Manager from 1995 through February 3, 2005. Her contract of employment incorporates by reference the University and Community College System of Nevada Code ("Code"). (Employment Contract, Defs.' Ex. 1(# 25).)

It appears that Plaintiff's husband, Peter Morran, was diagnosed with pancreatic cancer in early April 2004. On April 16,

---

1. Plaintiff did not submit any evidence in opposition to Defendants' motion for summary judgment (# 25), and she did not include a statement of facts in her opposition (# 37). Therefore, the facts are largely taken from Defendants' motion for summary judgment (# 25).

2004, Plaintiff partially completed a FMLA leave request form. (Req. for FMLA Leave, Ex. 2, U0180–U0182 (# 26).) The spaces for the estimated dates of leave and the reason for leave are blank, but there is a note to see the attached letter. In the letter (Defs.' Ex. 2, U0182), Ms. Morran describes her current understanding of her husband's diagnosis and the uncertainties regarding his course of treatment. She concludes the note saying, "Please advise me if this request can be held until I know what is going to happen." It appears that Kathryn C. Hotchkiss called Ms. Morran soon after and indicated that a medical certification might be needed (Pl.'s Depo. 14:15–15:3, Defs.' Ex. 4(# 29)). But, in an ensuing conversation, Ms. Hotchkiss noted that Plaintiff had a large reserve of sick and annual leave, so it was decided that Plaintiff would first exhaust her sick and annual leave prior to seeking FMLA leave. (Pl.'s Depo. 15:3–16:11.)

From April 16, 2004 to September 7, 2004, Plaintiff intermittently took sick or annual leave as needed. It appears that she filled out leave request forms for each of those absences (Pl.'s Depo. 11:23–25, Defs.' Ex. 5(# 29)). There is no allegation that a leave request was ever denied during this period.

There is some dispute regarding the events of September 7, 2004, Ms. Morran's last day at work. It appears undisputed that the morning of September 7 was relatively chaotic at work and that Ms. Morran left work early in a state of frustration. There has been some allegation by Defendants, based on the statement of Brian Mello,[2] that Plaintiff said, "That is it, I quit," when she left work (Defs.' Ex. 2, U0170 (# 26)). But, Plaintiff's deposition disputes this account of events; she indi-

cates that she expressed her frustration with a coworker and said that she could not keep covering for his incompetence (Pl.'s Depo. 22:6–23:–9, Defs.' Ex. 6(# 30)). Plaintiff, however, does not allege that she made any reference to her need to care for her husband or any reference that might indicate a need for leave under the FMLA. It is undisputed that she left early that day and did not return. She was not terminated until February 3, 2005, and she was paid in full and received her benefits through February 28, 2005. (Pl.'s Depo. 73:8–24, Defs.' Ex. 7(# 30); Doetch Aff., Defs.' Ex. 22(# 32).)

Plaintiff submitted no leave requests after September 7, 2004. At least one phone message was left for Ms. Morran at her home, and she did not return the call. There is no evidence or allegation that Plaintiff called or otherwise contacted her employer in September and October 2004.

On September 10, 2004, Defendant Groth wrote a memorandum seeking the initiation of proceedings under Chapter 6 of the Code. (Sep. 10, 2004 Mem., Defs.' Ex. 9(# 30).) The memorandum recommends "that an administrative officer be appointed to investigate Angela's absence from work and, possibly, to institute disciplinary proceedings pursuant to Chapter 6" (Defs.' Ex. 9). The request was received by the President's Office on September 13, 2004, and approved by President John M. Lilley on that day (Defs.' Ex. 9). On September 24, 2004, Defendant Lilley appointed Rita Laden, Associate Vice President, as the administrative officer under section 6.7 of the Code. (Sep. 24, 2004 Mem., Defs.' Ex. 10(# 30).)

A month after her appointment as administrative officer for Ms. Morran's

---

**2.** The statement is not signed and does not appear to be an affidavit or declaration. It appears that this statement was prepared for a University proceeding under Chapter 6 that resulted in Plaintiff's eventual termination. It was submitted to this court along with other materials relating to the Chapter 6 proceedings. (Defs.' Ex. 2(# 26).)

Chapter 6 proceedings, Defendant Laden wrote Ms. Morran a charging letter. (Oct. 25, 2005 Letter, Defs.' Ex. 2, U0175–U0176 (# 26).) The letter was sent October 25, 2004 and received October 29, 2004. In the letter, Defendant Laden set forth the principal allegations against Ms. Morran. She notes Ms. Morran is charged with unauthorized absence from duty under Chapter 6 section 6.2.1(i) of the Code; she also sets forth the pertinent factual allegation—namely, that Plaintiff said she was quitting and that she had not returned phone calls from Cary Groth and K.C. Hotchkiss. The charging letter informs Ms. Morran that she can, at her option, present a written answer to the charge within seven college working days and chapter 6 of the Code was enclosed with the letter for Ms. Morran's reference. Finally, Defendant Laden's letter indicates that the complaint can be informally resolved under section 6.8.2 of the Code and expresses Defendant Laden's eagerness to resolve the complaint absent a hearing.

There is no allegation that Ms. Morran responded to this letter or otherwise contacted Defendant Laden. On November 4, 2004, however, her husband sent an e-mail message to Defendant Laden. (Nov. 4, 2004 E–Mail, Defs.' Ex. 12(# 30).) His e-mail responds to the factual allegations by indicating a dispute concerning who left messages for Ms. Morran, when the messages were left, what time Ms. Morran left work on September 7, 2004, and whether Ms. Morran said she was quitting when she left. He also alleges that Ms. Morran "has been suffering through what classically [sic] called a 'Nervous Breakdown'" (Defs.' Ex. 12, U0213.) Finally, he references Ms. Morran's FMLA leave request as follows:

> [Angela Morran] has, perhaps unwisely, relied on the words of Ms. Groth and Ms. Hotchkiss. Ms. Groth said "do what you have to do to take care of your family"[.] Angela did just that-perhaps too abruptly. In April Angela filed the form for Request of FMLA leave in order to protect her job (copies of the fax submittal are available). The form was not processed. The reason for this was given by MS [sic] Hotchkiss as that Angela had sufficient accrued sick leave and vacation time that submittal was not necessary. It seems that your proceeding stands in opposition to this notion.

(Def.'s Ex. 12, U0213.) Defendants allege that this e-mail alerted Defendant Laden to the April 16, 2004 FMLA leave request. It appears that the FMLA leave request form was submitted as evidence in the Chapter 6 hearing (Defs.' Ex. 2, U0180–U0179 (# 26)).

Defendant Laden submitted a memorandum to Defendant Lilley on November 22, 2004 recommending a special hearing regarding Ms. Morran's absence. The letter references Mr. Morran's e-mail, indicating that it explains the circumstances from his perspective, but the letter notes that Defendant Laden had not received any communication from Ms. Morran. The request for a special hearing was approved on November 24, 2004 (Nov. 22, 2004 Mem., Defs.' Ex. 13(# 30)). On December 29, 2004, Defendant Lilley sent a memorandum requesting the names of nine faculty members selected by lot from the standing faculty hearing panel for the special hearing. (Dec. 29, 2004 Mem., Defs.' Ex. 14(# 30).) Ms. Morran was informed of the nine names by letter on December 30, 2004. (Dec. 30, 2004 Letter, Defs.' Ex. 15(# 30).) On January 10, 2005, Defendant Laden sent a letter to Ms. Morran notifying her that a hearing had been set under chapter 6 for February 3, 2005. (Jan. 10, 2005 Letter, Defs.' Ex. 2, U0177–U0179 (# 26).) The letter restates the charges against Ms. Morran and gives the names of persons who may be called as witnesses to substantiate the charges. It also indicates that Ms. Morran may be

accompanied at the hearing by an advisor of her choice and that she may challenge two names of hearing panel members. Ms. Morran received the letter on January 13, 2005. (Defs.' Ex. 2, U0179.) Ms. Morran did not respond to the letter. (Pl.'s Depo. 39:21–40:25, Defs.' Ex. 16(# 30).)

The chapter 6 hearing was held on February 3, 2005. Plaintiff did not appear or otherwise participate in the hearing. The special hearing officer and the special hearing committee sent memoranda to Defendant Lilley indicating their finding that Ms. Morran was absent from duty without authorization and recommending termination. (Special Hearing Officer's Feb. 3, 2005 Mem., Defs.' Ex. 2, U0160–U0161 (# 26); Special Hearing Committee's Feb. 3, 2005 Mem., Defs.' Ex. 2. U0162–U0163 (# 26).) Defendant Laden also sent a memorandum to Defendant Lilley indicating his options with regard to the recommendations of the special hearing officer and committee. (Laden's Feb. 3, 2005 Mem., Defs.' Ex. 2, U0159 (# 26).) By letter dated February 25, 2005, Defendant Lilley informed Ms. Morran of his decision to terminate her employment as of 5:00 p.m. on February 3, 2005 and of his concurrence in the special hearing officer's finding that she had been absent from duty without authorization. The letter also references the portion of the Code detailing appeal rights and procedures. (Feb. 25, 2005 Letter, Defs.' Ex. 17(# 30).)

Plaintiff did not attempt to appeal her termination in a timely manner. She alleges that her attorney attempted to reopen the appeal at some point, but she provides no evidence of any attempt to appeal her termination. (Pl.'s Opp. 7 n. 1(# 37).) She initiated this action by her complaint of October 26, 2005(# 2) and filed her amended complaint on November 14, 2005(# 10).

### Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c);

*Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary Judgement is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.,* 192 F.3d 1260, 1264 (9th Cir.1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

### Eleventh Amendment Immunity

Defendants contend in their motion for summary judgment (# 25) that, under the Eleventh Amendment, they are immune from suit. They concede in their reply that immunity does not apply to Plaintiff's FMLA claim. (Defs.' Reply 8–9(# 39).) *See* 29 U.S.C. § 2617(a)(2) (allowing for a civil action under the FMLA against any employer, "including a public agency"); *Nev. Dep't of Human Res. v. Hibbs,* 538 U.S. 721, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) (holding Congress' abrogation of the States' immunity for purposes of the FMLA's family-leave provision was constitutional). But, they contend that Plaintiff's opposition (# 37) did not address Eleventh Amendment immunity with regard to her claims under the Rehabilitation Act and 42 U.S.C. § 1983.

■ Plaintiff did not explicitly address Eleventh Amendment immunity as it applies to her claim under the Rehabilitation Act. In fact, as noted below, Plaintiff did not address her Rehabilitation Act claim at all in her opposition (# 37) to Defendants' motion for summary judgment (# 25). Because, as is discussed below, Plaintiff has not shown a genuine issue of material fact on this claim, summary judgment will be granted for Defendants on the Rehabilitation Act claim. We decline, however, to grant summary judgment on the basis of Eleventh Amendment immunity because 42 U.S.C. § 2000d–7(1) clearly evinces Congress' intent to abrogate States' immunity for the purposes of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

With regard to the § 1983 claim, which is only brought against Defendants Groth, Laden, and Lilley in their individual capacities, Plaintiff's failure to address the Eleventh Amendment argument is of no consequence because Defendants did not argue that the Eleventh Amendment bars suits against state officials in their individual capacities. Rather, Defendants argued that the Eleventh Amendment bars a plaintiff from seeking retrospective relief under § 1983 from a State or its officials acting in their official capacities. (Defs.' Mot. 13(# 25).) Because Plaintiff's Third Claim For Relief is not brought against Defendant NSHE or any persons acting in their official capacities as State employees, Defendants' Eleventh Amendment argument in inapplicable to Plaintiff's § 1983 claim.[3]

---

**3.** Defendants' only immunity argument regarding Plaintiff's § 1983 claims against De-

fendants Groth, Laden, and Lilley in their

Defendants, therefore, do not enjoy Eleventh Amendment immunity from the claims presented in this action.

## Issue Preclusion

■ Defendants argue in their motion for summary judgment (# 25) that collateral estoppel should apply to bar Plaintiff from arguing issues litigated in the Chapter 6 proceedings. Plaintiff, relying on the recent Ninth Circuit holding in *Dias v. Elique*, 436 F.3d 1125 (9th Cir.2006), argues that collateral estoppel should not apply in this case absent a showing that the standard of proof imposed at the Chapter 6 proceeding was a preponderance of the evidence. *See id.* at 1129.[4] No evidence before the Court indicates what standard of proof applied at the Chapter 6 proceedings, and in their reply, Defendants appear to concede that collateral estoppel does not apply in this case. Therefore, collateral estoppel does not apply to the Chapter 6 proceedings.

## Rehabilitation Act of 1973

■ Defendants contend that "there is no showing that Plaintiff has been subjected to discrimination '*solely by reason of (her husband's) disability,*' or at all." (Defs.' Mot. 22(# 25).)[5] In her opposition (# 37) to Defendants' motion (# 25), Plaintiff does not address her claim under the Rehabilitation Act. The evidence before the Court, viewed in the light most favorable to Plaintiff, indicates that she was subject to an adverse action (termination), but that this adverse action was not solely caused by her association with her disabled husband. The records of the Chapter 6 process indicate that the committee was motivated by Plaintiff's failure to maintain contact with her employer and to appropriately arrange for any desired leave. There is no evidence before this Court substantiating Plaintiff's allegation in her amended complaint that she suffered a hostile work environment by rea-

individual capacities is an argument that these individuals enjoy qualified immunity (Defs.' Mot. 13–14(# 25)); however, we do not reach this issue because we find that there is no genuine issue of material fact remaining on Plaintiff's claim under § 1983.

4. Federal courts generally give the same preclusive effect to the decisions of state administrative agencies as the state itself would. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). In *Dias*, the Ninth Circuit applied Nevada law, which "gives agency determinations issue preclusive effect, provided they meet the requirements" of the general test for issue preclusion. *Dias v. Elique*, 436 F.3d 1125. The court concluded that because the standard of proof at the agency level was lower than that required for the plaintiffs' claims in federal court, issue preclusion did not apply in that case. *Id.* at 1129–30. "[T]he hearing officer only found that substantial evidence supported [University of Nevada, Las Vegas'] decision to terminate Appellants, while Appellants are required to prove their § 1983 and state-law claims by a preponderance of the evidence." *Id.*

5. The Rehabilitation Act prohibits discrimination in federally funded programs against an individual "*solely* by reason of her or his disability." 29 U.S.C. § 794 (emphasis added). To the extent that the Rehabilitation Act allows claims of associational discrimination (claims alleging discrimination by reason of an individual's association with a disabled person), such a claim requires a showing that the adverse actions were solely caused by an association with a disabled person. *See Glass v. Hillsboro School Dist. 1J*, 142 F.Supp.2d 1286, 1292 (D.Or.2001) (noting that to prevail on a theory of associational discrimination, the plaintiffs "must allege and prove that they ... were discriminated against in obtaining those services *solely* because they were associated with disabled individuals") (emphasis added). We need not explore further whether the Rehabilitation Act provides for claims of associational discrimination or whether the Rehabilitation Act covers mixed motive discrimination because Plaintiff has failed to meet her burden of establishing that a genuine issue of material fact persists on this claim.

son of her association with her disabled husband (Am.Compl.¶¶ 11, 14(# 10)). Because Plaintiff has failed to show a remaining genuine issue of material fact as regards her claim under the Rehabilitation Act, summary judgment for Defendants is appropriate on this claim.

### Due Process

■ Plaintiff's Third Claim for Relief alleges that "Defendants [Cary] Groth, Rita Laden, and [John] Lilley, acting under color of State law, caused Plaintiff's termination without due process of law subjecting them to liability under 42 U.S.C. § 1983." (Am.Compl.¶ 29(# 10).) Plaintiff's complaint focuses on the failure of these Defendants to follow the timing requirements of Chapter 6 of the Code and the failure to give Plaintiff notice of the name of the Special Hearing Officer as required by the Code. Defendants' motion for summary judgment (# 25) therefore focuses on these allegations. Plaintiff's opposition (# 37), however, does not discuss any of these allegations and appears to waive any allegations of § 1983 liability premised on these acts. Rather, Plaintiff's opposition contends that she was deprived of an opportunity to be heard when Defendants kept her husband's letter from the hearing officer. (Pl.'s Opp. 8(# 37).) Defendants' response argues that this due process arguments "asserts different claims than those set forth in [Plaintiff's Amended] Complaint." (Defs.' Reply 3(# 39).) It appears, however, that Plaintiff's amended complaint (# 10) was sufficient to put Defendants on notice of this claim. She alleges therein that "upon receipt of the charging letter under Chapter 6, [she] provided a rebuttal. This was the best 'opportunity to be heard' that she could muster." (Am.Compl.¶ 19(# 10).)

■ It does not appear, however, that Plaintiff's § 1983 claim can survive summary judgment on an "opportunity to be heard" theory. Plaintiff does not contest that she was given notice of the hearing and was free to attend the hearing with or without an advisor or attorney. Plaintiff does not contest that she did not attend the hearing. Chapter 6 of the Code does not provide for a mechanism by which a person charged with a violation of the Code could enter an appearance via an e-mail sent by a spouse. While, as Plaintiff argues, the e-mail may have been admissible evidence under the Code's relaxed evidentiary rules, it does not appear that any person was obligated to represent Plaintiff at the hearing if she chose not to appear herself. Viewing the evidence in the light most favorable to Plaintiff, it appears that Plaintiff received notice of the hearing and chose not to attend. Had she attended, there is no indication that she would not have been able to put on a full case on her own behalf. As Defendants' motion notes:

> Plaintiff was aware of the investigation into the charge of unauthorized absence from work and failure to return phone calls from work, the upcoming hearing date, time and place, the members of the hearing panel and her right to challenge panel members. Plaintiff did not respond to the Administrative Officer, Defendant Rita Laden's request to meet during the initial investigation or later to explain the circumstances of her absence. She did not respond to the opportunity to strike members from the Hearing Panel and she did not attend the hearing to present her explanation, excuse or justification for her absence.

(Defs.' Mot. 29(# 25).) Plaintiff does not contest this account of the facts and presents no authority indicating that the Chapter 6 proceedings did not afford her the process she was due. It appears that the Chapter 6 procedures according Plaintiff an opportunity to be heard were adequate.

As the Ninth Circuit has noted, "a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing." *Correa v. Nampa School Dist. No. 131,* 645 F.2d 814, 817 (9th Cir.1981). *See also Blanck v. Hager,* 360 F.Supp.2d 1137, 1153 (D.Nev.2005). Therefore, summary judgment is appropriate on Plaintiff's claim under § 1983 for alleged violations of her due process rights under the Fourteenth Amendment.

***IT IS THEREFORE HEREBY ORDERED*** that Defendants' motion for summary judgment (# 25) is granted insofar as the motion (# 25) seeks summary judgment on Plaintiff's claims under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* (Second Claim for Relief) and 42 U.S.C. § 1983 (Third Claim for Relief).

In light of our Order, issued concurrently with the present Order and granting summary judgment for Defendants on Plaintiff's claim under the Family Medical Leave Act, 29 U.S.C. § 2615 *et seq.,* (First Claim for Relief), we note that summary judgment has been granted for Defendants on all claims.

***IT IS THEREFORE HEREBY FURTHER ORDERED*** that the clerk shall enter an amended final judgment in favor of Defendants and against Plaintiff on all claims.