## Marc Flagg vs. AliMed, Inc.

Norfolk. January 8, 2013. - July 19, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Anti-Discrimination Law,* Employee, Employment, Handicap, Association, Termination of employment. *Employment,* Discrimination, Termination. *Practice, Civil,* Motion to dismiss. *Statute,* Construction. *Libel and Slander. Actionable Tort.*

This court concluded that, in the circumstances of a civil action alleging employment discrimination on the basis of handicap, the Superior Court judge erred in dismissing, for failure to state a claim upon which relief could be granted, the plaintiff's claim of associational discrimination, i.e., that the plaintiff's employment had been terminated, despite the plaintiff being an otherwise qualified, adequately performing employee, because the defendant employer did not want to bear the burden of increased health care costs (under a family medical insurance benefit that the employer provided to the plaintiff) when the plaintiff's wife developed a disabling medical condition, where the language and purpose of G. L. c. 151B, § 4 (16), as well as decisions of the Massachusetts Commission Against Discrimination, favored an interpretation of the statute prohibiting employment discrimination based on the disability of a family member, and where Federal antidiscrimination statutes have been interpreted to allow claims of associational discrimination. [27-37] Gants, J., concurring, with whom Cordy, J., joined.

In a civil action arising from the termination of the plaintiff from his employment, the Superior Court judge properly dismissed the plaintiff's claim of defamation, where the plaintiff did not allege that the defendant employer had published to anyone a statement that the plaintiff fraudulently had obtained money from the employer. [37-38]

Civil action commenced in the Superior Court Department on February 8, 2010.

A motion to dismiss was heard by *Patrick F. Brady,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Marc S. Alpert* for the plaintiff.

*James J. Rooney* for the defendant.

The following submitted briefs for amici curiae:

*John Pagliaro & Martin J. Newhouse* for New England Legal Foundation & another.

*J. Lynn Milinazzo-Gaudet* for Massachusetts Commission Against Discrimination.

*Rebecca G. Pontikes, Jonathan J. Margolis, & Beth R. Myers* for National Employment Lawyers Association, Massachusetts Chapter, & others.

*Matthew Segal, Sarah Wunsch, Anne Josephson, & Richard S. Loftus* for American Civil Liberties Union of Massachusetts & others.

*Janet Steckel Lundberg* for Women's Bar Association of Massachusetts.

*Martha Coakley*, Attorney General, *& Joshua D. Jacobson & Gabrielle Viator*, Assistant Attorneys General, for the Commonwealth.

BOTSFORD, J. The Commonwealth's antidiscrimination statute, G. L. c. 151B, § 4 (16), bars employment discrimination on the basis of handicap. This case presents the question whether the statute bars an employer from discriminating against its employee based on the handicap of a person with whom the employee associates. We answer that, in the circumstances of this case, it does.[1]

*Background.* The plaintiff, Marc Flagg, appeals from the dismissal of his second amended complaint (complaint)[2] against his former employer, the defendant, AliMed, Inc. (AliMed). The complaint contained claims of defamation and of employment discrimination in violation of G. L. c. 151B (c. 151B).[3]

We recite the pertinent facts alleged in the complaint. By

---

[1]We acknowledge the amicus briefs filed by New England Legal Foundation and Associated Industries of Massachusetts; Massachusetts Commission Against Discrimination; National Employment Lawyers Association, Massachusetts Chapter, the Lawyers' Committee on Civil Rights and Economic Justice, and the Disability Law Center; the American Civil Liberties Union of Massachusetts, the Charles Hamilton Houston Institute for Race and Justice, Gay & Lesbian Advocates & Defenders, and the Jewish Alliance for Law and Social Action; Women's Bar Association of Massachusetts; and the Attorney General.

[2]Although AliMed moved to dismiss the plaintiff's first amended complaint, the judge considered the motion in relation to the plaintiff's second amended complaint, which we treat as the operative complaint for purposes of this appeal.

[3]There is no dispute that before filing his complaint in the Superior Court the plaintiff had timely filed a complaint with the Massachusetts Commission Against Discrimination (commission), and thereafter removed it. See G. L. c. 151B, § 9. See *Everett v. 357 Corp.*, 453 Mass. 585, 600 (2009), citing

February, 2008, the plaintiff had worked for AliMed for approximately eighteen years, and had received good job performance reviews. As an employee, the plaintiff received a salary and benefits, including family medical insurance, and an implied term of his employment was that AliMed would not terminate him because a family member developed a serious medical condition that involved considerable medical expense. On December 7, 2007, the plaintiff's wife underwent surgery for removal of a brain tumor, and thereafter was receiving rehabilitative care. As a result, the plaintiff became responsible for caring for the couple's children, including the obligation to pick up his daughter from school — a task that required him to be absent from work from about 2:55 P.M. until about 3:20 P.M. on certain days. The plaintiff's manager at AliMed told him to take the time necessary to do what he had to do to care for his family. When the plaintiff left work to pick up his daughter on various days between December 27, 2007, and January 15, 2008,[4] he did not "punch out" — either when he went to pick up his daughter or after he had returned to work and was leaving at the end of the day. His manager knew the plaintiff was not punching out, and did not say anything to him about this practice. On February 4, 2008, however, AliMed terminated the plaintiff's employment, proffering as its reason the fact that the plaintiff had failed to punch out on certain days when he left to pick up his daughter and therefore was being paid for hours that he had not actually worked. AliMed's proffered reason for the termination was false: the real reason the plaintiff was terminated was that his wife had a very serious and expensive medical condition that rendered her totally disabled, and for which AliMed, through its health plan, was financially responsible. The February 4 employment termination took place at a time when the plaintiff's wife was again a hospital inpatient because of a recurrence of the brain tumor, and the termination resulted in the immediate cancellation of the plaintiff's health insurance and an initial denial of unemployment benefits.[5] As a conse-

*Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 531 n.11 (2001) (filing administrative complaint with commission is mandatory predicate for establishing jurisdiction in Superior Court).

[4]The plaintiff picked up his daughter according to this schedule from December 27 to 31, 2007, and January 2 to 8, 9 to 13, and 15, 2008.

[5]It appears that thereafter the plaintiff received unemployment benefits.

quence, the plaintiff had to deplete his retirement plan funds and all his savings and suffered mental anguish. In addition, AliMed's false reasons, and allegation that the plaintiff fraudulently was claiming that he had worked certain hours when he had not and thereby obtained money to which he was not entitled, "became known amongst fellow workers and the community at large," likely leading people who learned of this allegation and who did not know him to conclude that the plaintiff "had engaged in serious deliberate misconduct" when in fact he had not done so.

AliMed moved to dismiss the plaintiff's complaint pursuant to Mass. R. Civ. P. 12 (b) (6), as amended, 365 Mass. 754 (1974), and to strike portions of the complaint under Mass. R. Civ. P. 12 (f), as amended, 365 Mass. 754 (1974).[6] After a hearing, a judge in the Superior Court allowed the motion to dismiss, ruling that (1) the claim of defamation was not pleaded adequately; and (2) the plaintiff's claim of employment discrimination did not state a claim on which relief could be granted: "the theory that [AliMed] fired plaintiff because his wife was handicapped is not recognized in the Commonwealth." A judgment of dismissal entered on December 28, 2010, and the plaintiff timely filed an appeal in the Appeals Court. We transferred the appeal to this court on our own motion.[7]

*Discussion.* 1. *Standard of review.* In reviewing the correctness of the judge's decision allowing AliMed's motion to dismiss the plaintiff's complaint for failure to state a claim, see Mass. R. Civ. P. 12 (b) (6), we "take as true 'the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor.' " *Marram* v. *Kobrick Offshore Fund, Ltd.,* 442 Mass. 43, 45 (2004), citing *Blank* v. *Chelmsford Ob/Gyn, P.C.,* 420 Mass. 404, 407 (1995). To survive a motion to dismiss, the facts contained in the complaint, and the reasonable inferences drawn therefrom, must " 'plausibly suggest[]' . . . an entitlement to relief" (citation omitted). *Iannacchino* v. *Ford*

---

[6] The motion to strike pertained to certain allegations that AliMed claimed were privileged under G. L. c. 151A, § 46 (a). Our resolution of the case does not require us to consider this issue.

[7] This case has a lengthy procedural history that included its removal to the United States District Court followed by an order of remand to the Superior Court. That history does not have a bearing on the issues before us in this appeal, and we do not discuss it further.

*Motor Co.*, 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 545 (2007). We consider first the plaintiff's claim under G. L. c. 151B, and thereafter his defamation claim.

2. *Violation of c. 151B.* As the motion judge implicitly recognized, the plaintiff's claim is one of associational discrimination. The term "associational discrimination" refers to a claim that a plaintiff, although not a member of a protected class himself or herself, is the victim of discriminatory animus directed toward a third person who *is* a member of the protected class and with whom the plaintiff associates. See, e.g., *Barrett* v. *Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009), citing *Tetro* v. *Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999). In substance, the c. 151B count of the complaint alleges that AliMed, the plaintiff's employer, terminated his employment premised on discriminatory animus directed toward his handicapped wife, that is, its desire to be free from its obligation to pay for the wife's costly medical treatment. The plaintiff's argument is that this form of discrimination fits within the scope of c. 151B, § 4 (16) (§ 4 [16]), because it causes a direct and specific injury to the employee and represents "a formidable barrier to the full participation of an individual in the workplace," *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987), which c. 151B, § 4, is intended to prevent. We agree.

As we next discuss, interpreting § 4 (16) to encompass a claim of associational discrimination finds support in the language and purpose of that section and c. 151B more generally in the long-standing and consistent interpretation given to the statute by the Massachusetts Commission Against Discrimination (commission), and in the analogous provisions of Federal antidiscrimination statutes.

Section 4 (16) provides in pertinent part that it shall be an unlawful practice,

> "[f]or any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against,

> *because of his handicap, any person alleging to be a quali-*
> *fied handicapped person*, capable of performing the es-
> sential functions of the position involved with reasonable
> accommodation, unless the employer can demonstrate that
> the accommodation required to be made to the physical or
> mental limitations of the person would impose an undue
> hardship to the employer's business" (emphasis added).

AliMed argues that the language of this section precludes the
plaintiff from raising a claim of associational handicap dis-
crimination because the handicapped person at issue is not the
plaintiff — its employee — but the plaintiff's wife. AliMed
reads the section too narrowly. "The general and familiar rule is
that a statute must be interpreted according to the intent of the
Legislature ascertained from all its words construed by the
ordinary and approved usage of the language, considered in
connection with the cause of its enactment, the mischief or im-
perfection to be remedied and the main object to be accom-
plished." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See,
e.g., *Lopez* v. *Commonwealth*, 463 Mass. 696, 707 (2012)
(interpreting c. 151B, § 4 [4A]). Accordingly, although a
statute's words are of prime importance in a court's effort to
discern legislative intent, see, e.g., *Lowery* v. *Klemm*, 446 Mass.
572, 577 (2006), the words must be evaluated in the context of
the overarching purpose of the statute itself. We begin, therefore,
with the objectives and purposes of c. 151B.

Chapter 151B was enacted in 1946 to provide remedies for
employment discrimination, a practice viewed as harmful to "our
democratic institutions"[8] and a "hideous evil" that needs to be
"extirpated."[9] The Legislature recognized that employment dis-
crimination is often subtle and indirect, and that it may manifest
itself "by so many devious and various means that no single cor-
rective rule can be applied to prevent the injustices committed."[10]

---

[8]Report of the Special Commission Relative to the Matter of Discrimination
Against Persons in Employment Because of Their Race, Color, Religion or
Nationality, 1945 House Doc. No. 337, at 2.

[9]Report of the Governor's Committee to Recommend Fair Employment
Practice Legislation, 1946 House Doc. No. 400, at 7.

[10]Report of the Special Commission Relative to the Matter of Discrimination
Against Persons in Employment Because of Their Race, Color, Religion or
Nationality, *supra.*

And the Legislature determined that workplace discrimination harmed not only the targeted individuals but the entire social fabric. See *Gasior* v. *Massachusetts Gen. Hosp.*, 446 Mass. 645, 653-654 (2006), quoting *Stonehill College* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 549, 563, cert. denied sub nom. *Wilfert Bros. Realty Co.* v. *Massachusetts Comm'n Against Discrimination*, 543 U.S. 979 (2004) (recognizing that in context of c. 151B, punitive damages intended "as not merely vindicating personal rights, but comprising part of a scheme to vindicate a 'broader public interest in eradicating systemic discrimination' "). The remedial aims of the statute are "only broadly set out." *Dahill* v. *Police Dep't of Boston*, 434 Mass. 233, 239-240 (2001) (*Dahill*), quoting *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 204 (1981). The Legislature gave the commission comprehensive agency powers to effectuate the statute's aims, and expressly directed that c. 151B "be construed liberally for the accomplishment of its purposes." G. L. c. 151B, § 9.[11]

The statutory provisions that proscribe employment discrimination based on handicap — § 4 (16) and derivatively c. 151B, § 1 (16), (17), and (19)[12] — were added primarily in 1983.[13] See St. 1983, c. 533, §§ 2, 6. They were enacted three years after the Legislature ratified an amendment to the Massachusetts Constitution prohibiting all discrimination based on handicap. See art. 114 of the Amendments to the Massachusetts Constitution.[14] Read against the backdrop of this constitutional amendment as well as the command of c. 151B, § 9, to interpret

[11]While G. L. c. 151B (c. 151B) initially focused on employment discrimination based on race, color, religion, and national origin, see St. 1946, c. 368, § 4, other bases of discrimination, e.g., age, sex, sexual orientation, gender identity, and handicap, have been added to the statute over time.

[12]General Laws c. 151B, § 1 (16), (17), and (19), respectively define the following terms appearing in G. L. c. 151B, § 4 (16) (§ 4 [16]): "qualified handicapped person," "handicap," and "handicapped person."

[13]The definition of the term "handicapped person" was later rewritten to mean "any person who has a handicap" and therefore directly tie in with the definition of "handicap." See St. 1989, c. 722, § 11.

[14]Article 114 of the Amendments to the Massachusetts Constitution provides: "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth."

the statute liberally in order to effectuate its remedial purposes, these provisions can only be understood as establishing an expansive, categorical prohibition against discrimination based on handicap in the workplace generally.

When an employer subjects an otherwise satisfactory employee to adverse employment decisions premised on hostility toward the handicapped condition of the employee's spouse, it is treating the employee as if he were handicapped himself — that is, predicated on discriminatory animus, the employer treats the spouse's handicap as a characteristic bearing on the employee's fitness for his job.[15] The employee is thereby subjected to the type of "prejudice, stereotypes, or unfounded fear" relating to handicapped individuals that c. 151B, § 4 (16), seeks to protect against. See *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 383-384 (1993), quoting *School Bd. of Nassau County* v. *Arline*, 480 U.S. 273, 287 (1987). Cf. *Dahill*, 434 Mass. at 240-241.

Reading the statutory language broadly in light of its remedial purpose, and in order best to effectuate the Legislature's intent, we think that the concept of associational discrimination also furthers the more general purposes of c. 151B as a wide-ranging law, "seek[ing] . . . removal of artificial, arbitrary, and unnecessary barriers to full participation in the workplace" that are based on discrimination. *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987). See *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 391-392, cert. denied sub nom. *Globe Newspaper Co., Inc.* v. *Ayash*, 546 U.S. 927 (2005) (c. 151B is "comprehensive statute" and was enacted "to provide judicial and administrative remedies for destructive acts of discrimination in the workplace"). See also *Lopez* v. *Commonwealth*, 463 Mass. at 707. Significantly, c. 151B expressly gives standing to seek relief to "*[a]ny* person claiming to be aggrieved" by practices made unlawful by the statute (emphasis added). G. L. c. 151B, § 5. This section, using the same language as a cognate provision in Title VII of the Civil Rights Act of 1964, 42 U.S.C.

---

[15]We limit our analysis of associational claims to the immediate family context raised by this case; we have no occasion here to examine more attenuated associations.

§§ 2000e et seq. (2006 & Supp. V 2011) (Title VII), offers strong support for the conclusion that c. 151B's protections against workplace discrimination were intended to cover all those adversely affected, whether or not they are the direct target of the proscribed discriminatory animus. Cf. *Thompson* v. *North Am. Stainless, LP*, 131 S. Ct. 863, 869-870 (2011) (interpreting phrase "person claiming to be aggrieved" in Title VII, 42 U.S.C. § 2000e-5[b] [2006]).[16]

We return to the language of § 4 (16). The section declares it unlawful for an employer to discriminate against, "because of his handicap, any person alleging to be a qualified handicapped person." The key term in § 4 (16) is "handicap."[17] It is defined in relevant part to mean "(*a*) a physical or mental impairment which substantially limits one or more major life activities of a person; (*b*) a record of having such impairment; or (*c*) *being regarded as having such impairment*" (emphasis added). G. L. c. 151B, § 1 (17). The third prong of the definition "protects those persons who, whether actually impaired or not, may be the victims of stereotypic assumptions, myths, and fears regarding such limitations." *Dahill*, 434 Mass. at 241. We read this broad definition, and especially its third prong, as a signal that the Legislature intended § 4 (16) to prevent an employer's animus against disability from adversely affecting not just those employees with actual handicaps but essentially all members of its workforce, because every employee theoretically has the potential for

---

[16]In *Thompson* v. *North Am. Stainless, LP*, 131 S. Ct. 863, 869-870 (2011), the plaintiff filed an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2006 & Supp. V 2011) (Title VII), claiming that he had been fired in retaliation for the fact that his fiancée, who was employed by the same company as he, had filed a charge of gender discrimination with the Equal Employment Opportunity Commission. The United States Supreme Court ruled as follows: "We hold that the term 'aggrieved' in Title VII incorporates [the 'zone of interests'] test, enabling suit by any plaintiff with an interest arguably [sought] to be protected by the statutes."

[17]The term "handicap" is key because the other defined terms in § 4 (16) are linked to it. Specifically, "qualified handicapped person" is defined as "a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap," c. 151B, § 1 (16); and "handicapped person" is defined as "any person who has a handicap," c. 151B, § 1 (19).

"being regarded" by the employer as having an impairment. When an employer takes adverse action against its employee because of his spouse's impairment, it is targeting the employee as the direct victim of its animus, inflicting punishment for exactly the same reason and in exactly the same way as if the employee were handicapped himself. In other words, an employee treated in such a manner by his employer suffers precisely the same type of discrimination as an employee whom the employer directly but incorrectly "regard[s] as" being handicapped. In light of the Legislature's expansive definition of "handicap," and keeping in mind its command concerning liberal construction of the statute, see c. 151B, § 9, we conclude that the language of § 4 (16) is properly read to accommodate the concept of handicap discrimination based on association.[18]

Importantly, our interpretation of § 4 (16)'s language is one that the commission itself has adopted and consistently followed. "The primary responsibility to determine the scope of [c. 151B] has been entrusted to the [commission], not to the courts," *Rock v. Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 206 (1981), and we generally afford the commission's interpretation of c. 151B's provisions substantial deference. See, e.g., *Dahill, supra* at 239.[19] See also, e.g., *Zoning Bd. Of Appeals of Amesbury v. Housing Appeals Comm.*, 457 Mass. 748, 759-760 (2010). For over thirty years, the commission,

---

[18]In concluding that there are obvious and direct parallels between (1) an employee who fits within the third prong of the definition of "handicap" because he is "regarded as" handicapped by his employer, and (2) an employee whom the employer treats "as if" handicapped (here, because of the financial burden of the medical expenses arising from his spouse's known handicap), we have no occasion to consider whether an employee with a handicapped spouse himself is entitled to reasonable accommodation on account of his spouse's condition; that issue is not raised in this case.

[19]Regulations promulgated by the commission have the force of law, and courts are to give them the same deference as a statute. See *Global NAPs, Inc. v. Awiszus*, 457 Mass. 489, 496 (2010). Interpretations of c. 151B set out in the commission's guidelines and decisions, however, are entitled to substantial deference, but do not carry the force of law. See *id.* at 496-497 & n.12. Although commission interpretations that are inconsistent with provisions of c. 151B are not entitled to any deference and must be rejected, see *id.* at 497, that is not the case here. Rather, as discussed in the text, we have determined that the text of § 4 (16), reasonably read, fully supports the commission's interpretation.

through its decisions, has interpreted c. 151B, § 4, to protect against employment discrimination based on association,[20] including associational discrimination based on handicap. See, e.g., *Dittbenner* v. *Hapco Auto Parts, Inc.*, 11 Mass. Discrimination L. Rep. 1139 (1989) (person aggrieved due to association with disabled individual has standing to bring claim under c. 151B before commission).[21] This longstanding interpretation of § 4 (16) by the commission offers "illuminating" guidance to us, see *Dahill*, 434 Mass. at 239, and we accord it the deference to which it is due.

It is also significant that analogous Federal antidiscrimination statutes, Title VII and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. (2006 & Supp. V 2011) (Rehabilitation Act), have been interpreted to reach and cover claims of associational discrimination despite a lack of a specific reference in the statutory language.[22] See *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994) ("It is our practice to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G. L. c. 151B").

Title VII focuses on discrimination in employment, and "share[s] substantial common ground" with c. 151B. See *Massachusetts Bay Transp. Auth.* v. *Massachusetts Comm'n Against Discrimination*, 450 Mass. 327, 337-338 (2008). While Title VII does not cover employment discrimination based on handicap, Federal courts have long construed its provisions prohibiting employment discrimination based on race to cover an adverse employment action taken against an employee because of his or

[20]The first of the commission's decisions was *Romano* v. *Lowell Paper Box Co.*, 4 Mass. Discrimination L. Rep. 1087 (1982) (interpreting c. 151B, § 4 [1], to protect employee against associational discrimination based on religion).

[21]See also *Snelders* v. *Boston Hous. Auth.*, 23 Mass. Discrimination L. Rep. 339 (2001) (denial of request for public housing transfer because of association with handicapped husband); *Hamer* v. *Cambridge Sch. Dep't*, 21 Mass. Discrimination L. Rep. 154 (1999) (denial of tenure based on association with handicapped son); *Lowe* v. *Frank's Place*, 16 Mass. Discrimination L. Rep. 1478 (1994) (denial of services in place of accommodation because of association with individual using wheelchair).

[22]The Americans with Disabilities Act, 42 U.S.C. § 12112 (2006 & Supp. V 2011) (ADA), is also an analogous Federal antidiscrimination statute, but for reasons we discuss *infra*, we do not view the ADA as offering guidance on the question whether § 4 (16) is construed properly to include claims of associational handicap discrimination.

her association with someone of a different race against whom the discriminatory animus is directed — even though there is no mention in the statute of discrimination based on association, and even though, like § 4 (16), the statutory language on its face appears to focus only on discrimination "because of" the employee's *own* protected characteristic.[23] See, e.g., *Johnson* v. *University of Cincinnati*, 215 F.3d 561, 573-575 (6th Cir.), cert. denied, 531 U.S. 1052 (2000) ("in order to state a cognizable claim under Title VII, the plaintiff himself need not be a member of a recognized protected class; he need only allege that he was discriminated on the basis of his association with a member of a recognized protected class"); *Tetro* v. *Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 994-995 (6th Cir. 1999) ("A white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child"). See also *Holcomb* v. *Iona College*, 521 F.3d 130, 138-139 (2d Cir. 2008) (employee claiming he was fired because of interracial marriage stated claim of discrimination based on race under Title VII); *Parr* v. *Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) (same). A stated reason in some of these decisions for the inclusion of associational discrimination is to carry out the clear congressional mandate underlying Title VII to eliminate discrimination based on, for example, race: "Title VII of the 1964 Civil Rights Act provides us with a clear mandate from Congress that no longer will the United States tolerate this form of discrimination. It is, therefore, the duty of the courts to make sure that the Act works, and the intent of Congress is not hampered by a combination of a strict construction of the statute in a battle with semantics." *Parr* v. *Woodmen of the World Life Ins. Co.*, *supra*, quoting *Culpepper* v. *Reynolds Metals Co.*, 421 F.2d 888, 891 (5th Cir. 1970). See *Tetro* v. *Elliott Popham Pontiac,*

[23]The relevant section of Title VII, 42 U.S.C. § 2000e-2(a)(1) (2006), makes it unlawful "for an employer . . . to discriminate against *any individual* with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's* race, color, religion, sex, or national origin" (emphases added). Similarly, c. 151B, § 4 (16), defines as an unlawful practice an employer's discrimination against an employee "*because of his* handicap" (emphasis added).

*Oldsmobile, Buick, & GMC Trucks, Inc., supra.*[24] The specific directive in c. 151B, § 9, to interpret the statute liberally to effectuate its remedial purposes instructs us that we have a similar duty when construing the handicap discrimination provisions of § 4 (16).

The Rehabilitation Act in a sense is a more direct analogy to § 4 (16). It was originally enacted in 1973 and it bars discrimination based on handicap or disability in programs receiving Federal financial assistance. The Rehabilitation Act is the statute on which the Massachusetts Legislature "explicitly patterned the definition of 'handicap' " in c. 151B,[25] *Dahill,* 434 Mass. at 238 & n.8, and the one to which we specifically have turned for interpretative guidance concerning the handicap discrimination provisions in c. 151B. See *Cox* v. *New England Tel. & Tel. Co.,* 414 Mass. 375, 382 (1993). Federal courts have construed the Rehabilitation Act to reach associational handicap discrimination although, like § 4 (16), the statute itself does not mention this form of discriminatory action but simply proscribes discrimination against a handicapped person "solely by reason of her or his disability."[26] 29 U.S.C. § 794(a) (2006). See, e.g.,

[24]It is true that, unlike a handicap, everyone has a race, and in a case where, for example, a white employee claims that his employer has discriminated against him because of his association with his African-American spouse or biracial child, as courts have noted, in one sense the claim is based on the employee's own race. See, e.g., *Holcomb* v. *Iona College,* 521 F.3d 130, 138-139 (2d Cir. 2008); *Tetro* v. *Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.,* 173 F.3d 988, 994-995 (6th Cir. 1999) (*Tetro*). But as the courts also have recognized, more fundamentally the claim is that the employer is punishing its employee because of its discriminatory animus directed against the employee's associate — his wife or child. See *Tetro, supra.* At that fundamental level, claims of associational discrimination based on race and handicap are the same. It is for this reason — as well as the similarity in statutory language, see note 23, *supra* — that we find the decisions interpreting Title VII cited in the text to serve as an instructive analog for our interpretation of § 4 (16).

[25]The Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. (2006 & Supp. V 2011) (Rehabilitation Act), and the ADA, 42 U.S.C. § 12112, discussed in the text *infra,* currently use the term "disability" while c. 151B, § 4 (16), refers to "handicap." There is no substantive distinction between the two terms. See *Dahill* v. *Police Dep't of Boston,* 434 Mass. 233, 236 n.7 (2001).

[26]Under § 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a) (2006), "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participa-

*Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268, 279-281 (2d Cir. 2009) (minor children who proved independent injury could allege associational discrimination based on harm stemming from denial of services to deaf parent); *Morran* v. *Nevada Sys. of Higher Educ.*, 482 F. Supp. 2d 1202, 1208 n.5 (D. Nev. 2007) (assuming, without deciding, that nondisabled wife could bring discrimination claim based on her association with disabled husband); Hooker *vs.* Dallas Indep. Sch. Dist., U.S. Dist. Ct., No. 3:09-CV-01289-D, slip op. at 10-11 (N.D. Tex. Oct. 13, 2010) (nondisabled parent constituted "aggrieved" person under Rehabilitation Act and could bring suit for injury suffered as result of school's denial of child's special education services). See also *Glass* v. *Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1288, 1291-1292 (D. Or. 2001) (parents of autistic child did not suffer separate and direct injury needed to state independent claims for associational discrimination based on disability). As with the Title VII cases previously cited, these Rehabilitation Act decisions, determining in substance that recognition of associational discrimination claims is necessary to effectuate that statute's protective purposes, support our interpretation of § 4 (16).

AliMed makes much of the fact that the American with Disabilities Act (ADA) specifically includes associational discrimination in the employment context in a section specifying types of prohibited disability discrimination against a "qualified individual." See 42 U.S.C. § 12112(b)(4) (2006 & Supp. V 2011) ("the term 'discriminate against a qualified individual on the basis of disability' includes . . . excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association"). AliMed points out that in some respects, as this court has noted, c. 151B's provisions on handicap discrimination are "less generous" than the ADA, see *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 454 (2002), and argues that associational handicap discrimination is one of those less generous respects.

---

tion in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

We disagree. The ADA was enacted in 1990. The ADA, therefore, cannot usefully inform our understanding of the Legislature's intent concerning associational discrimination when it amended c. 151B seven years earlier to add § 4 (16) and related sections proscribing handicap discrimination in employment to our statute. We find a far more persuasive analogy in the earlier Rehabilitation Act, on which, as stated, c. 151B's handicap discrimination provisions were actually based.

For all these reasons, we hold that associational discrimination based on handicap is prohibited under § 4 (16).[27] In the present case, the plaintiff's complaint alleges that he was a qualified, adequately performing employee who was terminated by AliMed because his wife's total disability resulted in substantial medical expenses that AliMed was obliged to cover as part of the family health benefits provided as a term of the plaintiff's employment — that is, he was fired because of his association with his handicapped wife. The plaintiff has alleged a plausible set of facts for relief, and the dismissal of this claim must be reversed.

3. *Defamation.* The judge allowed AliMed's motion to dismiss Count I, stating that "[t]he defamation count is not adequately pleaded," because "[t]he Second Amended Complaint does not clearly recite the defamatory statement or assert that it was published to anyone." Flagg argues that the dismissal was improper because he was unable to include in his complaint these specifics absent some form of discovery of AliMed's records to obtain the necessary information.

In order to state a claim of defamation, a plaintiff must allege facts indicating that (1) the defendant published a false statement regarding the plaintiff — that is, the defendant communicated the statement concerning the plaintiff to a third party; (2) the statement could damage the plaintiff's reputation in the community; and (3) the statement caused economic loss or is otherwise actionable without proof of economic loss. See *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66

---

[27]In *Ayanna* v. *Dechert LLP*, 840 F. Supp. 2d 453, 456-457 (2012), the court interpreted § 4 (16) in the same manner advanced by AliMed here, that is, as plainly precluding any claim of associational handicap discrimination. See *Scott* v. *Encore Images, Inc.*, 80 Mass. App. Ct. 661, 669 (2011) (noting, but not reaching, same interpretive issue). For the reasons we have discussed, we disagree with this interpretation.

(2004). See also *Hiles* v. *Episcopal Diocese of Mass.*, 437 Mass. 505, 519 (2002). We agree with the judge that the plaintiff's complaint does not meet this standard. The plaintiff alleges that AliMed's false allegation that the plaintiff fraudulently obtained money to which he was not entitled by claiming to have worked hours when he had not "became known amongst fellow workers and the community at large." He does not, however, allege how that allegation "became known": whether it was through a communication or "publication" by AliMed to the plaintiff's "fellow workers" and others in the community — or whether it was via some other, independent source.[28] Cf. *Transamerica Ins. Co.* v. *KMS Patriots, L.P.*, 52 Mass. App. Ct. 189, 193-194 (2001) (insurer's duty to defend not triggered in relation to potential defamation claim where third-party complaint failed to indicate insured company published allegedly defamatory material). Massachusetts civil pleading rules are relatively liberal, see Mass. R. Civ. P. 8 (a), as amended by 365 Mass. 749 (1974), but a plaintiff must allege facts that demonstrate he has a cause of action, and cannot ignore well-recognized pleading standards because he has not yet acquired sufficient information to do so. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636, quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level").

*Conclusion.* The judgment dismissing the plaintiff's second amended complaint is affirmed with respect to Count I of that complaint and reversed with respect to Count II. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

GANTS, J. (concurring, with whom Cordy, J., joins). I agree with the court that, where an employee alleges that he was

---

[28]There is a question whether the complaint's allegations adequately address the third element of a defamation claim — that publication of the defamatory statement caused economic harm or was actionable regardless — but we do not rest our decision on this point.

terminated from employment because the employer did not want to be financially responsible under its health plan for the anticipated medical expenses arising from his spouse's handicap, the employee states a cognizable claim of "associational discrimination" under G. L. c. 151B, § 4 (16), which bars employment discrimination on the basis of handicap. I write separately to emphasize the limited scope of this holding, because I fear that "associational discrimination" might otherwise be interpreted more broadly than the court's opinion intends.

As the court notes, § 4 (16) makes it an unlawful practice "[f]or any employer . . . to dismiss from employment . . . because of *his* handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodations required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business" (emphasis added). This language reflects that the Legislature was focused on prohibiting employment discrimination against a qualified handicapped employee because of the employee's handicap where the employee with reasonable accommodation is capable of performing the essential functions of the job. The language *does not* suggest that it was intended to protect an employee from dismissal because of a family member's handicap, where the employee himself is not handicapped.

I recognize that the interpretation of this language by the Massachusetts Commission Against Discrimination (commission) would typically be entitled to substantial deference, but deference is warranted only where an agency's interpretation of a statute is reasonable and, ultimately, our review is de novo. See *Attorney Gen.* v. *Commissioner of Ins.*, 450 Mass. 311, 319 (2008), quoting *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006) ("We review questions of statutory interpretation de novo, . . . giving 'substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration enforcement' "). Cf. *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 632-633 (2005) (where Legislature has "spoken with certainty on the topic in question," no deference granted to agency regula-

tion interpreting statute). When one looks to the few commission cases that have interpreted § 4 (16) to include associational discrimination, one finds little analysis that warrants any deference.

In the case it characterized as one of "first impression" on this issue, the commission declared that "[a]djudicatory bodies, including this Commission, have consistently held that the zone of interest in discrimination cases includes an individual's association with a member of a protected class." *Dittbenner* v. *Hapco Auto Parts, Inc.*, 11 Mass. Discrimination L. Rep. 1139, 1140 (1989) (*Dittbenner*). But the cases it relied on to support this proposition each involved discrimination on the basis of race, religion, or gender, not handicap. There is no suggestion from the commission's opinion in *Dittbenner* that the commission considered whether the language of § 4 (16) would bar or limit a claim of associational discrimination, or whether an employer was required reasonably to accommodate an employee who was coping with a family member's handicap. In the only other handicap employment discrimination case where, following a full hearing, the commission recognized a claim of associational discrimination, the commission merely cited the holding of *Dittbenner* and then found that the plaintiff had failed to make a prima facie case of associational discrimination. *Hamer* v. *Cambridge Sch. Dep't*, 21 Mass. Discrimination L. Rep. 154, 156 (1999).[1]

I am persuaded that the plaintiff in this case has stated a claim under § 4 (16) for two reasons, neither of which arises from any deference to the commission's interpretation of the statute. First, where an employer provides health insurance coverage to an employee's family, and a family member is handicapped, an employer will attribute the anticipated or actual

---

[1] I acknowledge that the Massachusetts Commission Against Discrimination (commission) has recognized claims of associational handicap discrimination in at least three other cases, but each of these cases involved discrimination outside the context of employment, and therefore has limited interpretive relevance in construing G. L. c. 151B, § 4 (16). See *Snelders* v. *Boston Hous. Auth.*, 23 Mass. Discrimination L. Rep. 339 (2001) (housing); *Murphy* v. *Kenmore Cafe*, 17 Mass. Discrimination L. Rep. 1451 (1995) (place of public accommodation, in violation of G. L. c. 272, § 98); *Lowe* v. *Frank's Place*, 16 Mass. Discrimination L. Rep. 1478 (1994) (same).

medical expenses arising from such a handicap to the employee, even if the employer recognizes that a family member and not the employee himself is handicapped, because the potential cost to the employer in higher insurance premiums is the same regardless of whether the medical expenses are incurred by the employee or a family member, and those costs would not be borne by the employer if the employee were terminated from employment. As a result, at least with respect to an employer's concern with the cost of health insurance premiums, an employee may be regarded by an employer as if he had his family member's impairment, which places the employee in a position akin to that of an employee who is "being regarded as having [a physical or mental impairment which substantially limits one or more major life activities of a person]," the third alternative definition of "handicap" under G. L. c. 151B, § 1 (17). In such a case, the employer has taken an adverse employment action against the employee because of the fear that the *employee's* continued employment will increase the health insurance premiums that must be paid by the employer.

Second, as the court notes, we have looked for guidance in interpreting the handicap discrimination provisions of c. 151B to interpretations by the Federal courts of portions of the Rehabilitation Act of 1973, notably its definition of "disability" currently codified at 29 U.S.C. § 705(9) (2006 & Supp. V 2011) (Rehabilitation Act). We have done so because the Legislature itself "explicitly patterned the definition of 'handicap' " in c. 151B on the definition of "disability" in the Rehabilitation Act. *Dahill* v. *Police Dep't of Boston,* 434 Mass. 233, 238 & n.8 (2001). See *Cox* v. *New England Tel. & Tel. Co.,* 414 Mass. 375, 382 (1993) ("we may look" to case law construing Rehabilitation Act for guidance in construing c. 151B). As with G. L. c. 151B, § 4 (16), the language of the Rehabilitation Act suggests that the only persons who are protected by its prohibition against discrimination are those who are themselves disabled. See 29 U.S.C. § 794(a) (2006) ("No otherwise qualified individual with a disability . . . shall, solely *by reason of her or his disability*, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance" [emphasis added]). Yet, as the court notes in this case, numer-

ous Federal courts have interpreted that statute to reach associational handicap discrimination under certain circumstances. See *ante* at 35-36.

While I agree with the court that the plaintiff has made a cognizable claim of associational discrimination under § 4 (16) in the circumstances he has alleged in this case, I note the special nature of these circumstances. The court's finding of a cognizable claim here is based solely on the allegation that he was fired because the employer feared the medical expenses his spouse was likely to incur because of her handicap; it is not based on any allegation that he was fired because the employer refused to accommodate his need to devote greater time to family matters because of his wife's handicap. In fact, the court's opinion does not suggest that an employer is required under § 4 (16) to provide reasonable accommodation to an employee who is not himself handicapped to allow the employee to attend to important family matters, medical or otherwise. See *ante* at note 18. Some accommodation may be required by other statutes, see, e.g., Family and Medical Leave Act, Pub. L. 103-3, 103d Cong., 1st Sess., 107 Stat. 6 (1993), codified at 29 U.S.C. §§ 2601 et seq. (2006 & Supp. IV 2010), or by common decency, but the failure to do so is not handicap discrimination under § 4 (16).

I note that § 102(b)(4) of the Americans with Disabilities Act, Pub. L. 101-336, 101st Cong., 2d Sess., 104 Stat. 327 (1990), codified at 42 U.S.C. § 12112(b)(4) (2006 & Supp. V 2011) (ADA), expressly prohibits associational discrimination by defining "discriminate" to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." See *Den Hartog* v. *Wasatch Academy*, 129 F.3d 1076, 1082 (10th Cir. 1997) (*Den Hartog*). But Federal courts, based on the plain language of this provision, its legislative history, and the "interpretive guidance" of the Equal Employment Opportunity Commission, have concluded that an employer is not required under the ADA to provide an employee with reasonable accommodation because of a relative's or associate's disability. See *Larimer* v. *International Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir.), cert. denied, 543 U.S. 984 (2004) (*Larimer*); *Den*

*Hartog, supra* at 1084-1085; *Tyndall* v. *National Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 214 (4th Cir. 1994). See also 29 C.F.R. Part 1630 App., at 401 (2012) ("employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities. Thus, for example, an employee would not be entitled to a modified work schedule as an accommodation to enable the employee to care for a spouse with a disability").[2]

Because an individual associated with a handicapped person is not entitled to reasonable accommodation under the ADA, the types of cases that fall within the intended scope of the ADA's "rarely litigated . . . association section" are sharply limited. *Larimer, supra.* One type of case, as here, is where a "spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan." *Id.* Another type is characterized as "disability by association," where an employer fears that a presently nondisabled employee will become disabled because of his association with a disabled person, such as through contact with a person carrying the human immunodeficiency virus (HIV), or because of common genetic components, such as where a relative suffers from a genetically caused disease. *Id.*

The court does not decide in this case whether associational handicap discrimination under G. L. c. 151B, § 4 (16), will be interpreted to extend beyond the type of case at issue here. But, where G. L. c. 151B does not expressly identify associational discrimination based on handicap as a form of unlawful employment discrimination, we should be reluctant to interpret it to be more expansive than the ADA, which expressly provides that "excluding or otherwise denying equal jobs or benefits to a

[2]It is also worthy of note that, under the Americans with Disabilities Act (ADA), a person who is not disabled but is nonetheless protected from discrimination because he is "regarded as" disabled is not entitled to reasonable accommodation. See 42 U.S.C. § 12201(h) (Supp. V 2011) (employers and other covered entities "need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102[1] of this title solely under subparagraph [C] of such section," which provides that an individual is considered disabled if he is "being regarded as having such an impairment"); 29 C.F.R. Part 1630 App., at 393 (2012).

qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association" constitutes "discriminat[ion] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b)(4) (2006 & Supp. V 2011).